**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION**

| | | |
|---|---|---|
| In Re: | ) | |
| | ) | Chapter 11 |
| ALFREDO AVILA and | ) | |
| TERESITA MARSAL-AVILA, | ) | |
| | ) | Case No. 15-14355 |
| Debtors. | ) | |
| | ) | |
| | ) | |
| | ) | |
| | ) | Honorable Judge Jack B. Schmetterer |

## DISCLOSURE STATEMENT

ALFREDO AVILA and TERESITA MARSAL-AVILA, Debtors and Debtors in Possession herein, by and through their Attorneys, Paul M. Bach and Penelope N. Bach, Sulaiman Law Group, file this Disclosure Statement ("Disclosure Statement") pursuant to Section 1125 of the Bankruptcy Code and in conjunction with their Plan of Reorganization ("Plan"). (A copy of the Plan of Reorganization is attached to this Disclosure Statement as Exhibit A).

### INTRODUCTION

The Debtors filed their voluntary petition for relief pursuant to Chapter 11 of the Bankruptcy Code on April 22, 2015. The Debtors have operated their businesses (immigration law firm and construction) and managed their financial affairs as Debtors-in-Possession since the inception of this reorganization case pursuant to Sections 1101 and 1107 of the Bankruptcy Code. No trustee, examiner or committee of unsecured creditors have been appointed to serve in this Chapter 11 case.

The Debtors are the proponents and disbursing agents of this Plan. This Plan provides for distributions to the holders of allowed claims from the continued operation of the immigration law firm and construction businesses.

In Summary, and as stated in detail below, the Debtors owned three improved parcels of real estate at the time of filing.   The majority of the total dollar amount of creditors' claims relate to one of these three parcels of real estate.   The Debtors have also has unsecured creditors, namely American Express Centurion Bank, American Express Travel Related Services, JPMorgan Chase Bank, N.A. (3 accounts), Citibank SD, N.A., Comenity Bank, DSNB Macy's, Quantum3 Group LLC, Synchrony Bank, Target Credit Card and Wells Fargo Bank, N.A. (3 accounts). The Debtor's Plan contains but is not limited to the following provisions:

1) 34 Regent Drive, Oak Brook, Illinois 60523.  The Debtors are continuing to make monthly installment payments maintaining payments to both the first mortgage (PNC Bank, N.A.) and the second mortgage (TCF National Bank, N.A.).

2) 2500 S. Drake Avenue, Chicago, Illinois 60623 and 2458 S. Millard, Chicago, Illinois 60623 Both of these properties are surrendered to ByLine Bank in full satisfaction of their secured claim.

3) 2012 Audi A8L and 2003 Toyota Tundra.  The Debtors are continuing to make monthly installment payments maintaining payments to both vehicles to PNC Bank, N.A. (Audi) and Toyota Lease Trust (Toyota).

4) The Debtors will be making monthly installment payments to unsecured creditors in monthly installments over a period of ten (10) years. Each creditor will get a pro rata share of $1,584.39 per month leaving a total payment in the amount of $190,127.29.

The attached Exhibit B lists each creditor with the relevant class, amount of the secured and unsecured claim(s) of each creditor. After determining, based on Exhibit B, the class of a particular creditor, the chart below will show the total dollar amounts and timing of payments to be made under the plan. This chart identifies: all classes of claims, the total amount of claims to each class, and the amount (dollar and percentages) to be paid to each class. Exhibit B (as well as the description on the attached chart) shows the composition of each class.

In Summary, there are administrative claims and six classes of creditor claims which are to be treated as follows:

| | TOTAL $ AMOUNT TO BE PAID | TIMING OF PAYMENTS | NUMBER OF CLAIMS AND AMOUNT TO BE PAID IN PLAN |
|---|---|---|---|
| Administrative Claims | $50,000.00 (estimated) | Effective date of Plan | Debtors' attorney and United States Trustee (100%) |
| Class 1-Secured PNC Bank, N.A. 34 Regent Drive Oak Brook, IL (First Mortgage) | $394,329.93 | $2,692.13/month current payment | One claim to be paid current payment plus interest |
| Class 2-Secured TCF National Bank 34 Regent Drive Oak Brook, IL (Second Mortgage) | $189,610.00 | $800/month current payment | One claim to be paid current payment plus interest |
| Class 3-Secured ByLine Bank Two properties | $1,174,506.00 | No payments after sale pursuant to surrender | Surrender |
| Class 4-Secured PNC Bank, N.A. 2012 Audi A8L | $56,331.31 | $945.08/month current payment | One claim to be paid current payment plus interest |
| Class 5-Secured Toyota Lease Trust 2013 Toyota Tundra | $6,036.03 | $464.31/month current payment | One claim to be paid current payment plus interest |

| | TOTAL $ AMOUNT TO BE PAID | TIMING OF PAYMENTS | NUMBER OF CLAIMS AND AMOUNT TO BE PAID IN PLAN |
|---|---|---|---|
| Class Six-Unsecured See Exhibit B for Class Composition | $190,127.29 | $1,584.39/month beginning month 1 for 120 months | 14 claims totaling $190,127.29 paid pro rata (100%) |

### SUMMARY OF TREATMENT OF CLAIMS AND INTERESTS UNDER PLAN

The Debtors' Plan provides that, on its Effective Date, the Debtors will retain all of their assets and will thereafter be responsible for paying the Claims of their creditors, as provided below.

In general, the Debtors will pay Administrative Claims and Six classes of Creditors Claims.

a. ADMINISTRATIVE CLAIMS: This Claim will be paid on or within thirty days of the Effective Date of the Plan or in accordance with agreements between the Debtors and each holder of an Administrative Claim. United States Trustee's fees and other bankruptcy fees shall be paid in full on or before the Effective Date or as they come due thereafter. The source of the payment for these amounts will be the Debtors' income from the law firm and construction businesses.

b. CREDITOR CLAIMS:

1. The following parties have filed claims or have secured claims and are being treated as secured under the Plan: PNC Bank, N.A. **(Class 1)** (first mortgage on 34 Regent Drive, Oak Brook, Illinois), TCF National Bank **(Class 2)** (second mortgage on 34 Regent Drive, Oak Brook, Illinois), ByLine Bank **(Class 3)** (surrender of all claims regarding 2500 S. Drake Avenue, Chicago, Illinois 60623

-4-

and 2458 S. Millard, Chicago, Illinois 60623, PNC Bank, N.A. **(Class 4)** (lien on

Debtors' 2012 Audi A8L), and Toyota Lease Trust **(Class 5)**(lien on Debtors'

2013 Toyota Tundra).

2.  There is one class of unsecured claims:   The unsecured class **(Class 3)** contains

all of the unsecured non priority claims against the debtor.  See Exhibit B for the

amount and creditors holding Unsecured Non Priority Claims.

3.  Secured Claims will be paid interest on payments subsequent to April 22, 2015 at

the rate of interest provided in the underlying security documents except as

provided for under each individual claim.  The following secured and tax

creditors are being paid interest subsequent to April 22, 2015:  (1) PNC Bank,

N.A. as to first mortgage on 34 Regents Drive, Oak Brook, Illinois and 2012 Audi

A8L; (2) TCF National Bank as to second mortgage on 34 Regents Drive, Oak

Brook, Illinois; and (3) Toyota Lease Trust as to 2013 Toyota Tundra.

4.  No interest will be paid subsequent to April 22, 2015 to ByLine Bank and the

following unsecured creditors:  American Express Centurion Bank, American

Express Travel Related Services, JPMorgan Chase Bank, N.A. (3 accounts),

Citibank SD, N.A., Comenity Bank, DSNB Macy's, Quantum3 Group LLC,

Synchrony Bank, Target Credit Card and Wells Fargo Bank, N.A. (3 accounts).

5.  Any uncashed checks or returned distributions shall be the property of the Debtor.

The Debtors advise all Creditors and other parties in interest that under Section

1127(a) of the Bankruptcy Code, the Debtors may, within certain limits, modify

the Plan at any time before confirmation.  Further negotiations between the

Debtors and one or more of their creditors may result in such modifications.  The

Debtors do not expect or intend to agree to modifications that would materially and\or adversely influence the feasibility of the Plan as now constituted. The Debtors will bring all such proposed modifications to the attention of the Bankruptcy Court by appropriate pleading before they become effective.

c.  Plan Funding: The Debtors will make all payments out of their future income from the law practice and construction businesses. The Debtors are the disbursing agent. The Debtors expect to receive net income sufficient to pay all Claims. Creditors can review a detailed projection of the Debtors' Income and Expenses which is attached.

## ANALYSIS OF THE DEBTORS' INCOME, CURRENT ASSETS AND LIABILITIES

a.  The Debtors base their projections on historical income and in consideration of the fact that their businesses are variable at times. The regular income of the Debtors via their law firm and construction businesses will allow them to fund the Plan. Creditors can review complete projections of Debtors' income and expenses and a valuation of the Debtors' assets (see attached).

b.  The Debtors' income does not follow a normal distribution or pattern. As a result, the Debtors via the law firm and construction businesses sometimes receive substantial net income followed by one or more months of losses. The Debtors project income sufficient on average to make all required payments under the Plan.

## CLASSIFICATION OF CLAIMS AND INTERESTS

The Bankruptcy Code requires that a plan of reorganization place each classified creditor's Claim in a class with other Claims or Interests that are "substantially similar." The dollar amount of a claim is usually not a basis upon which to distinguish it from other Claims.

As stated, the Plan establishes six classes of Claims.  The Bankruptcy Court must independently conclude that the Plan's classification scheme is authorized, but any creditor who believes that that the Plan has improperly classified any group of Claims or Interest may object to confirmation of the Plan.  The Debtors believe that the Plan's classification of Claims fully complies with the requirements of the Bankruptcy Code and applicable case law.

General Terms:  All Claims submitted by creditors shall be fixed and determined in accordance with the proof of claim filed with the Clerk of the United States Bankruptcy Court. The filing of an Amended Proof of Claim does not change how a creditor is classified in the Plan.  Unless otherwise specifically provided for in this Disclosure Statement following the Petition Date:

 a. No creditor shall accrue interest on its Claim after the Petition Date;

 b. If the agreement between the parties so provides, a Creditor may accrue interest on its Claim (at the rate provided in the agreement).  With the exception of the Secured Claims, if so provided in the Plan of Reorganization, the Debtors do not believe that they are required to pay any interest on any Claim.   See above for a list of creditors that will and will not be paid interest

 c. After the Petition Date, each Creditor that is not secured or receiving  interest may not collect:

  1. default interest;

  2. penalties; the right to accelerate payment; and

  3. Contractual attorney's fees.

 d. Effect of Filing and/or Not Filing Claims-Each Creditor, who has filed a proof of claim, is not bound by the Debtors' estimates of Claims against it.  Any creditor, who

did not file a proof of claim, is bound by the Debtors' calculation of the amount owed

to that creditor.  If the Debtors disputed a debt on his schedules and the Creditor in

question did not file a proof of claim, the debt shall be deemed disallowed.  Claims

for expenses of administration may be allowed in the discretion of the Bankruptcy

Court and for amounts over which the Debtors have no control.

<u>TREATMENT OF UNIMPAIRED AND UNCLASSIFIED CLAIMS</u>

The following class is unimpaired by the Plan in accordance with Section 1124 of the

Bankruptcy Code or is not required to be classified in this Plan of Reorganization under the

provisions of the Bankruptcy Code.

<u>ALLOWED CLAIMS THAT ARE NOT IMPAIRED</u>

a.      **Administrative Expenses** - These claimants represent claims arising post-petition.  Any

Administrative Expense that is an Allowed Claim shall be paid by the Reorganized Debtors, in

full, in cash or as otherwise agreed.  Payment of Professional Fees shall be subject to the

provisions of Section 330(a) and 331 of the Bankruptcy Code or as otherwise provided by the

Plan.  United States Trustee and other bankruptcy fees shall be paid in full on or before the

Effective Date or as they come due thereafter.  The source of payment for these amounts will be

the Debtors' income from operations and from employment.  The Debtors expect Administrative

Claims will be approximately $50,000.00 as of the Effective date.

b.      **<u>CLASS 1 -Secured Claim of PNC Bank, N.A. as to 34 Regent Drive, Oak Brook,</u>**

**<u>Illinois 60523</u>**.  PNC Bank, N.A. holds a perfected first mortgage on the real estate commonly

known as to 34 Regent Drive, Oak Brook, Illinois in the amount of $394,329.93 (Claim Number

13).  The Allowed Claim of PNC Bank, N.A. (Claim Number 13) is a fully secured claim.  The

secured claim is dealt with in Class 1 and is not impaired.  Commencing with the first payment

-8-

due after the Petition Date, the Debtors shall make monthly mortgage payments to PNC Bank, N.A. directly in the amount of $2,692.13 per month in accordance with the terms of the underlying loan documents increased or decreased as necessary to reflect changes in variable interest rates, escrow requirements. All remaining terms of the original note that are not inconsistent with this section remain in effect.

c. **CLASS 2 -Secured Claim of TCF National Bank as to 34 Regent Drive, Oak Brook, Illinois 60523**. TCF National Bank holds a perfected second mortgage on the real estate commonly known as to 34 Regent Drive, Oak Brook, Illinois in the approximate amount of $189,610.00. The Allowed Claim of TCF National Bank is a fully secured claim. The secured claim is dealt with in Class 2 and is not impaired. Commencing with the first payment due after the Petition Date, the Debtors shall make monthly mortgage payments to TCF National Bank directly in the amount of $800.00 per month in accordance with the terms of the underlying loan documents increased or decreased as necessary to reflect changes in variable interest rates, escrow requirements. All remaining terms of the original note that are not inconsistent with this section remain in effect.

d. **CLASS 4- Secured Claim of PNC Bank, N.A.** Secured Claim of PNC Bank, N.A. as to the Debtors' 2012 Audi A8L. PNC Bank, N.A. holds the perfected lien on the Debtors' 2012 Audi A8L. The debtors owed on the Petition date, $56,331.31 (Claim 2) as to the Debtors' 2012 Audi A8L. The Debtors will pay the full amount due and owing pursuant to the underlying retail installment contract including any interest, late charges, other fees, etc. and PNC Bank N.A. shall retain their lien until such time as the underlying retail installment contract has been fully satisfied pursuant to applicable non-bankruptcy law. This claim is not impaired.

e. **CLASS 5- Secured Claim of Toyota Lease Trust**. Secured Claim of Toyota Lease

Trust as to the Debtors' 2013 Toyota Tundra. Toyota Lease Trust holds the perfected lien on the

Debtors' 2013 Toyota Tundra. The debtors owed on the Petition date, $6,036.03 as to the

Debtors' 2013 Toyota Tundra. The Debtors will pay the full amount due and owing pursuant to

the underlying retail installment contract including any interest, late charges, other fees, etc. and

Toyota Lease Trust shall retain their lien until such time as the underlying retail installment

contract has been fully satisfied pursuant to applicable non-bankruptcy law. This claim is not

impaired.

ALLOWED CLAIMS THAT ARE IMPAIRED

A. **Class Two-ALLOWED SECURED CLAIMS THAT ARE IMPAIRED**

Allowed Secured Claims that are impaired include each Allowed Secured Claim, held by a

Creditor, that the debtors were not current and in default with on the Petition date relating to real

estate that is secured by one or more of the Debtors' assets and is not disputed, contingent or

unliquidated and allowed as of the effective date. Each creditor shall be paid as stated in the

detail under each claim.

**CLASS 3-Secured Claim Byline Bank as to 2500 S. Drake Avenue, Chicago, Illinois 60623**

**and 2458 S. Millard, Chicago, Illinois 60623.** Byline Bank holds the perfected security

interests on the Debtors' real estate commonly known as 2500 S. Drake Avenue, Chicago,

Illinois 60623 and 2458 S. Millard, Chicago, Illinois 60623. The secured claim of Byline Bank

shall be allowed in the amount of $1,174,506.00 (Claim 9). Debtors surrender the real property

commonly known as 2500 S. Drake Avenue, Chicago, Illinois 60623 and 2458 S. Millard,

Chicago, Illinois 60623 in full satisfaction of the Secured Claim of Byline Bank. No portion of

ByLine Bank's Claim is unsecured non priority and as a result Byline is treated only as a fully

Secured Creditor and no amount shall be paid to Byline as a result of an Unsecured Non Priority

Claim.

**B.**    <u>**Class Six- Allowed Non Priority Unsecured Claims**</u> - Each Holder of Allowed

Class 6 Claims (American Express Centurion Bank, American Express Travel Related Services,

JPMorgan Chase Bank, N.A. (3 claims), Citibank SD, N.A., Comenity Bank, DSNB Macy's,

Quantum3 Group LLC, Synchrony Bank, Target Credit Card and Wells Fargo Bank, N.A. (3

accounts)) which total $190,127.29 shall be paid  100% percent without interest of all Claims

held by such Holders beginning the month after plan confirmation for one hundred and twenty

months with a payment each month of $1,584.39 pro rata (total payment of $190,127.29).

(100%)

## PURPOSE OF DISCLOSURE STATEMENT

This Disclosure Statement is provided to all of the known holders of Claims against and

Interests in the Debtors. The purpose of this Disclosure Statement is to provide sufficient

information to enable a hypothetical, reasonable investor, typical of the holder of Claims which

are impaired under the Plan, to make an informed judgment about the Plan.

Unless specifically stated to be from other sources, the information contained in this

Disclosure Statement has been submitted by the Debtors. No representations concerning the

Debtors or this Plan, other than those set forth in this Disclosure Statement, have been authorized

by the Debtors.

The Debtors believe that all of the information contained in this Disclosure

Statement is accurate. However, the Debtors are unable to warrant that there are no

inaccuracies.

<u>CONFIRMATION OF PLAN</u>

The Debtors are providing a copy of this Disclosure Statement to each Creditor whose Claim has been scheduled by the Debtors or who has filed a proof of claim in the Debtors' case. The Debtors intend that this Disclosure Statement will assist creditors whose Claims are impaired in evaluating the Plan and in determining whether to accept or reject the Plan. Under the Bankruptcy Code, an interested party may not solicit acceptance of the Plan unless (a) that interested party furnishes a copy of a disclosure statement before or concurrently with solicitation or (b) the Bankruptcy Court has authorized the interested party to solicit votes.

A quick overview of the process for the confirmation of a reorganization plan may be useful. For a bankruptcy court to approve a proposed reorganization plan, the Plan's proponent must show that the Plan satisfies the 13 requirements of Section 1129 of the Bankruptcy Code, if they are applicable. They are: (1) the Plan's compliance with Title 11, (2) the proponent's (in this case the Debtors') compliance with Title 11, (3) the good faith proposal of the Plan, (4) the disclosure of payment, (5) the identification of management, (6) the regulatory approval of rate changes, if applicable, (7) the "best interest" test, (8) the unanimous acceptance by impaired classes, (9) the treatment of administrative and Priority Claims, (10) the acceptance by at least one impaired class of Claims, (11) the feasibility of the plan, (12) the bankruptcy fees, and (13) retiree benefits. See Section 1129(a)(1)-(13) of the Bankruptcy Code. If, however, a plan is not approved by all of the impaired classes, as required by Section 1129(a)(8) of the Bankruptcy Code, it is still possible for a plan to be confirmed. If at least one the non-insider, impaired classes of Claims approves the plan, then a plan may be

confirmed if two additional requirements are met. See 1129(a)(8) of the Bankruptcy

Code. If the Bankruptcy Court finds that all of the applicable requirements of Section

1129(a) of the Bankruptcy Code are met except for Section 1129(a)(8) of the

Bankruptcy Code and also that the plan does not discriminate unfairly between

impaired classes and is fair and equitable to the rejecting classes, then the Bankruptcy

Court may confirm the plan. See Section 1129(b)(1)-(2) of the Bankruptcy Code.

<u>EFFECT OF CONFIRMATION</u>

The provisions of a confirmed plan bind the debtors, any entity issuing

securities under the plan, any entity acquiring property under the plan, and any creditor,

equity security holder, or general partner in the debtors, whether or not the claim or

interest of such creditor, equity security holder, or general partner is impaired under the

plan and whether or not such creditor, equity security holder, or general partner has

accepted the plan.

Except as otherwise provided in the plan or the order confirming the plan, the

confirmation of a plan vests all of the property of the estate in the debtors.

Confirmation of the plan does not discharge any debt provided for in the plan

until the court grants a discharge upon completion of all payments under the plan.

<u>PERSONS ENTITLED TO VOTE ON PLAN</u>

The Bankruptcy Court in connection with confirmation of the Plan will only

count the votes of classes of creditors whose Claims are allowed and who the Debtors

seeks to impair under the Plan. Generally, and subject to the specific provisions of

Section 1124 of the Bankruptcy Code, this includes creditors who, under the Plan, will

receive less than payment in full in cash of the allowed amounts of their respective

Claims on the "Effective Date." The Debtors' Plan seeks to impair the Claims of

ByLine Bank (Class 3) and Unsecured Creditors (Class 6).

Any ballot which accompanies this Disclosure Statement does not constitute a

proof of claim. If you are uncertain whether your claim has been correctly scheduled,

you may examine the Debtors' schedules which are on file with, and may be inspected

at the Office of the Clerk of the Bankruptcy Court, 219 S. Dearborn, Chicago, Illinois.

The Bankruptcy Court, at the confirmation hearing, must determine, among

other things, whether each class of creditors who's Claims are impaired by the Plan has

accepted the Plan. Under Section 1126 of the Bankruptcy Code, an impaired Class of

Claims is considered to have accepted the Plan if both a majority in number and two-

thirds (2/3) of the dollar amount of those actually voting vote to accept the Plan. The

Claims of those who do not vote are not counted in determining whether the requisite

statutory majority in number and dollar amount have voted for acceptance. Acceptance

by the statutory majority will bind the minority who dissent and those who fail to vote.

Further, unless there is unanimous acceptance of the Plan by an impaired class, the

Bankruptcy Court must also determine whether under the Plan class members will

receive property of a value, as of the effective date of the Plan, that is not less than the

amount that such class members would receive or retain, if a Chapter 7 trustee

liquidated the Debtors' property under Chapter 7 of the Bankruptcy Code on the

Effective Date of the Plan.

<u>SOURCES OF INFORMATION</u>

In preparing this Disclosure Statement, counsel for the Debtors relied upon and

utilized the following:

(1) Income and Expense records;

(2) Financial records; and Estimation of the Debtors' future income and

financial information; and

(3) Discussions with the Debtors.

## HISTORY AND BACKGROUND

The Debtors are individuals who own a law firm and a construction business. This bankruptcy was caused by the lack of cash flow for a period of time caused by the down turn in the economy and falling behind on mortgage payments regarding two properties that are being surrendered. The Debtors now have sufficient income to fund the Plan of Reorganization.

## POST-PETITION ACTIVITIES

On April 22, 2015, Debtors filed its voluntary petition for relief under Chapter 11 of the Bankruptcy Code. During the course of this reorganization case, the Debtors continued and will continue with the business operations of their businesses. The operating reports filed by the Debtors as shown by the Summary of Operating Reports reflect what will be produced by the businesses.

All of the above events have enabled the Debtors to prepare the Plan. Without these events, the Debtors would have lost the pieces of real estate to a foreclosure sale.

## OTHER ASPECTS OF THE PLAN

The Debtors shall be disbursing agents under the Plan.

All executory contracts not previously assumed, assigned or rejected which exist between the Debtors and any other party, whether oral or in writing, shall be deemed rejected as of Confirmation of the Plan except the vehicle lease with Toyota Leasing Trust. Further, all of the Debtors' assets shall vest in the Debtors, upon Confirmation of the Plan, subject only to the terms

and conditions of the Plan. The Debtors shall be entitled to manage their affairs and operate its business after Confirmation without further Order of the Bankruptcy Court.

The Plan is self-executing. The Debtors shall not be required to execute any newly created documents to effectuate the terms of the Plan. The Bankruptcy Court shall retain jurisdiction after Confirmation of the Plan of Reorganization to: (i) consider applications for fees and allowances for professional persons; (ii) supervise the implementation of this Plan; (iii) hear and conclude all adversary proceedings or contested matters; (iv) resolve disputes regarding interpretation of this Plan; (v) fix expenses of administration; (vi) enter Orders to further consummation of the Plan; (vii) approve modification of the Plan upon motions brought before the Bankruptcy Court; (viii) consider all applications and matters pending before the Bankruptcy Court on the date of Confirmation; (ix) hear and conclude any adversary proceedings and other matters relating or giving rise to litigation recoveries (x) enter any order, including injunctions, necessary to enforce title, rights and powers of the Debtors, and to impose such limitations, restrictions, terms and conditions of such title, rights and powers as the Bankruptcy Court may deem necessary; (xi) close and or reopen this Bankruptcy Case for any appropriate purpose but specifically to enter a Discharge and/or hold proceedings related to the Debtors' Discharge; and (xii) enter an Order concluding and terminating this Chapter 11 case.

The provisions of the Plan shall bind all creditors, Interest holders and parties in interest. Except as expressly provided in the Plan, no interest or penalties shall accrue or be paid to any creditor.

## LIQUIDATION ANALYSIS

The Debtors have sufficient assets to pay all creditors in full if some or most non exempt property is liquidated. This is why the Debtors are proposing a plan that pays all

creditors in full over time. The Debtors request that Creditors take this fact into consideration

when voting on the Plan. The attached comparison indicates the likely results of a forced

liquidation and shows that under the Plan creditors are getting the same such creditors would

receive in liquidation just over time instead of through a liquidation.

| Real Property | Fair Market Value | Principle Balance | Costs of Liquidation | Exemptions | Liquidated Value |
|---|---|---|---|---|---|
| 34 Regent Drive, Oak Brook, Illinois | $850,000.00 | $584,939.93 | $55,500.00 | $30,000.00 | $179,560.0 |
| 2500 S. Drake Avenue, Chicago, Illinois | $224,530.00 | $771,463.14 | $9,657.31 | $0.00 | $0.0 |
| 2458 S. Millard Avenue, Chicago, Illinois | $142,308.00 | $226,455.00 | $12,881.86 | $0.00 | $0.0 |
| Total | $1,216,838.00 | $1,582,858.07 | $78,039.17 | $30,000.00 | $179,560.0 |
| **Personal Property** | | | | | |
| Miscellaneous Cash on Hand | $100.00 | | | $100.00 | $0.0 |
| Wells Fargo | | | | | |
| Checking Account No. ending with 8954 | $500.00 | | | $500.00 | $0.0 |
| Savings Account No. ending with 0279 | $104.80 | | | $104.80 | $0.0 |
| Checking Account No. ending 5024 | $500.00 | | | $500.00 | $0.0 |
| Used Household Goods, Furnishings, and Appliances | $2,780.00 | | | $0.00 | $2,780.0 |
| Personal Items (Books, Family Pictures, CDs, DVDs) | $300.00 | | | $0.00 | $300.0 |
| Used Clothing | $450.00 | | | $450.00 | $0.0 |
| Assorted Jewelry (Wedding Bands, etc.) | $100.00 | | | $100.00 | $0.0 |
| College Illinois Plan | $46,895.00 | | | $46,895.00 | $0.0 |
| IRA | $35,300.00 | | | $35,300.00 | $0.0 |
| IRA | $59,899.00 | | | $59,899.00 | $0.0 |
| Atelier Building Group, Inc. | | | | | $0.0 |
| 2003 GMC Box Truck Value at $3,499.50 | $3,499.50 | | $1,154.84 | | $2,344.6 |
| 1996 Dump Truck Value of $4,000 | $4,000.00 | | $1,320.00 | | $2,680.0 |
| Miscellaneous Tools | $8,000.00 | | $2,640.00 | | $5,360.0 |
| 2012 Audi A8L | $42,594.00 | $56,992.00 | | | $0.0 |
| 2003 GMC Box Truck Value at $3,499.50 | $3,499.50 | | | $3,499.50 | $0.0 |

| | |
|---|---|
| Net Value Real Estate | $179,560.07 |
| Net Value Personal Property | $13,464.67 |
| **Net Liquidation Value** | **$193,024.74** |

(*See* Liquidation Statement attached as Exhibit C to this Disclosure Statement.)

It should be considered that a liquidation either by the Debtors or a Chapter 7 Trustee

could add a layer of costs which could if the real and personal property is sold at a discount make all creditors not paid in full. The Debtors do not believe this is likely to happen but this a justification to allow the Debtors to pay all creditors over time.

## MEANS FOR IMPLEMENTING THE PLAN

The Debtors intend to continue the operations of their business which, based upon historical data, should generate a profit sufficient to pay the monies required under this Plan. All distributions under the Plan will be made from the law firm and construction businesses as a going concern.

## FEASIBILITY AND FAIRNESS OF PLAN

Attached to this Disclosure Statement, as Exhibit E, is a Summary of Operation Reports Subsequent to Filing of the Case. The summary of Operations Reports also contains a Projection of Future Income. The purpose of the Summary of Operations Reports, Projection of Future Income is to show the anticipated cash flow. The debtors represent that the figures shown in the operating reports are historical figures and the debtors anticipate that the income and expenses as shown will continue. The purpose of these Operating Reports and the Tax Return is also to provide creditors with projected financial information concerning the Debtors' ability to make the payments under the Plan. These projections were prepared by the Debtors and are based upon past history as demonstrated by the Operating Reports filed with the court. Consolidated Financial Statements are also not attached but the Operating Reports and the Projections are intended to provide the same information. It is believed and represented that financial history has been steady and this income and expenses are expected to continue.

The Plan is feasible given the reasonable projections of the Debtors. These projections clearly reflect the Debtors' ability to perform under the proposed Plan. This fact

makes this Plan feasible.

The Debtors believe that this Plan represents an opportunity for the holders of Allowed Claims to receive substantially more than such claimants would receive in a forced liquidation. Given the conservative financial projections and the Debtors' performance, the Plan is also fair.

## RECOMMENDATION

The Debtors strongly recommend that those persons entitled to vote, vote to accept the Plan.

> ALFREDO AVILA and TERESITA
> MARSAL-AVILA
>
> By: /s/Paul M. Bach
> Paul M. Bach, one of his attorneys

DEBTOR' S COUNSEL:
Paul M. Bach
Penelope N. Bach
SULAIMAN LAW GROUP, LTD
900 Jorie Blvd Suite 150
Oak Brook, IL 60523
(630) 575 - 8181